IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-603-FL

| | |
|---|---|
| KULBIR SIDHU, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CANCER CENTERS OF NORTH ) | |
| CAROLINA, P.C. and RALEIGH ) | |
| HEMATOLOGY ONCOLOGY ) | |
| ASSOCIATES, P.C., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' partial motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 11). Plaintiff responded in opposition, (DE 16) and defendants replied (DE 19). For the reasons stated below, defendants' motion is denied.

## STATEMENT OF THE CASE

Plaintiff, a citizen and resident of Wake County, North Carolina, and a duly licensed physician and radiation oncologist, filed complaint on August 14, 2012, in Wake County Superior Court against defendants Cancer Centers of North Carolina, P.C. ("CCNC"), and Raleigh Hematology Oncology Associates, P.C. ("RHOA") (collectively, "defendants"). Raleigh Hematology Oncology Associates, P.C. is the former name of defendant CCNC. November 24, 2008, defendant RHOA filed articles of amendment with the North Carolina Secretary of State to amend its articles of incorporation so as to change its name to Cancer Centers of North Carolina. Defendant CCNC is a professional corporation organized under North Carolina law with its principal

place of business in Wake County, North Carolina.

Plaintiff asserts claims for disparate treatment in violation of the Americans with Disabilities Act Amendment Act ("ADAAA"), for failure to make reasonable accommodations in violation of the ADAAA, and a state common law claim for wrongful discharge. Defendants removed this action to this court on September 17, 2012. On October 15, 2012, defendants filed answer and counterclaims for breach of contract, an alternative claim for negligence, two counts of unjust enrichment, and misrepresentation. That same day, they filed the instant motion to dismiss, arguing that plaintiff's claim for wrongful discharge was not one over which this court had jurisdiction nor a claim upon which relief could be granted. Issues raised are ripe for ruling.

## STATEMENT OF FACTS

Plaintiff alleges the following facts, which for purposes of this motion, the court takes to be true. Plaintiff worked as an at-will employee for defendants as a radiation oncologist from January 2, 2006, to August 10, 2011. (Compl. ¶¶ 18, 24, 71). Defendants had generally subdivided their offices into a medical oncology department, and a radiation oncology department. (Id. at ¶ 25). Between January 2, 2006, and around May, 2011, defendants' radiation oncology department consisted of plaintiff and John F. Reilly, M.D. ("Reilly"). (Id. at ¶ 26).

During the summer of 2010, some of plaintiff's co-workers began to suspect plaintiff was suffering from depression. (Id. at ¶ 31). Around July 28, 2010, Alan D. Kritz, M.D. ("Kritz"), defendants' president, informed plaintiff that the other oncologists had met to discuss plaintiff's situation, and agreed that she should take disability leave and see a psychiatrist. (Id. at ¶ 32). Plaintiff complied, and was diagnosed with major depressive disorder and ADD. (Id. at ¶¶ 33-34). Plaintiff met with Kritz weekly to update him on her condition. (Id. at ¶ 36).

2

At some point during her leave of absence, Kritz instructed plaintiff to return to work beginning on November 1, 2010, and plaintiff again complied. (Id. at ¶¶ 38-39). Plaintiff informed Kritz that in order to effectively do her work she would need a full-time radiation oncology registered nurse ("RN") to assist her. (Id. at ¶ 38). Kritz told plaintiff that defendants would provide two such RNs to the department so that she and Reilly would each have the assistance of one. (Id. at ¶ 40). Upon her return, however, plaintiff learned that defendants had hired one RN and one lower-level, lesser-trained licensed practical nurse ("LPN"), and that the LPN was assigned to work with plaintiff. (Id. at ¶ 41). The LPN had no meaningful experience in radiation oncology or radiation oncology patient care, no radiation experience, no training in radiation oncology clinical care and clinical assessment, and no training in RN-level clinical and patient care. (Id. at ¶ 43).

Plaintiff requested authorization to hire a medical scribe at her own expense to help her with documentation and other paperwork. (Id. at ¶ 48). Defendants approved her request, and plaintiff hired a scribe in February of 2011. (Id. at ¶ 50). However, on March 9, 2011, Kritz and others met with plaintiff regarding her paperwork, and informed her that she had to terminate her scribe and that should could hire a nurse practitioner ("NP") or physician's assistant ("PA") in place of the scribe. (Id. at ¶ 51-53). Plaintiff, believing hiring an NP or PA to perform the work of a medical scribe was inefficient, never hired such a person after her medical scribe was terminated. (Id. at ¶ 55).

Also in or about February, 2011, plaintiff, believing the workplace had possibly become contaminated with unsafe chemicals due to equipment failure, filed a written complaint and request for inspection with the North Carolina Department of Labor. (Id. at ¶ 76, Ex. C). By March, 2011, defendants knew plaintiff was the one who had filed the complaint. (Id. at ¶ 77).

On or about August 10, 2011, approximately six months after plaintiff filed her written

3

complaint, defendants terminated plaintiff from her employment, purportedly because she was ineffective and inefficient in completing her documentation and other paperwork tasks necessary to treat her patients. (Id. at ¶ 58). However, plaintiff's paperwork was substantially similar to that of her colleagues. (Id. at ¶ 64).

**COURT'S DISCUSSION**

A.  Standard of Review

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In evaluating whether a counterclaim is stated, "a court accepts all well-pled facts as true and construes these facts in the light most favorable" to the claimant, but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id.

Rule 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A party may attack subject matter jurisdiction on grounds that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or on grounds that the jurisdictional facts in the complaint are not true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant asserts that a complaint does not allege facts upon which subject

4

matter jurisdiction can be based, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. . . . [T]he facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (quotations omitted).

B.  Discussion

In her claim for wrongful discharge, plaintiff asserts that defendants terminated her for one or more of the following reasons: her major depressive disorder and/or ADD; because of her record of such impairment; because she was regarding as having such an impairment; or because she filed a written complaint in good faith with the North Carolina Department of Labor requesting a workplace inspection. Plaintiff maintains her termination was thus in violation of North Carolina public policy as articulated in three statutes: the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), N.C. Gen. Stat. § 168A-1, et seq.; the North Carolina Equal Employment Practices Act, N.C. Gen Stat. § 143-422.2, et seq.; and/or the Occupational Safety and Health Act of North Carolina ("OSHANC"), N.C. Gen. Stat. § 95-126, et seq.

"Ordinarily, an employee without a definite term of employment is an employee at will and may be discharged without reason." Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). However, this at-will rule is subject to certain exceptions; the North Carolina Supreme Court has held that "there can be no right to terminate . . . [at-will employment] for an unlawful reason or purpose that contravenes public policy." Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting Sides v. Duke University, 74 N.C. App at 342, 328 S.E.2d at 826 (1985)). The North Carolina Supreme Court has further explained that "at

5

Case 5:12-cv-00603-FL   Document 27   Filed 05/15/13   Page 5 of 7

the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

Defendants move to dismiss plaintiff's claim for wrongful discharge, arguing that the NCPDPA provides an exclusive remedy that preempts common law remedies, thus plaintiff cannot bring, and the court cannot hear, a wrongful discharge claim based upon the public policy codified therein. Defendants also contend that as the NCPDPA and the NCEEPA both apply to disability discrimination and have similar purposes with respect to discouraging employment discrimination based upon disability, they are properly read together. See Carver v. Carver, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). They then argue that as the NCPDPA and NCEEPA are properly interpreted together here, the remedies of the NCPDPA ought to be read into the NCEEPA when the NCEEPA is applied to disability discrimination. Thus they maintain that a violation of the public policy of the NCEEPA cannot support a claim for common law wrongful discharge.[1]

Assuming, without deciding, that defendants are correct in asserting that the statutory remedy under the NCPDPA is exclusive and preempts a claim for common law discharge based upon a violation of the public policy expressed therein, plaintiff has nevertheless stated a valid claim for wrongful discharge in violation of the public policy proclaimed in the NCEEPA. Courts have repeatedly recognized that a termination in violation of the NCEEPA may serve as the basis for a

---

[1] Defendants also argue that a violation OSHANC cannot serve as the basis for plaintiff's wrongful discharge claim because the amount of time which elapsed between plaintiff's complaint to the North Carolina Department of Labor and her termination is, as a matter of law, too long to allow a plaintiff to show causation, a necessary element. In order to prevail on their partial motion to dismiss, defendants must show that none of the statutes cited by plaintiff can support a claim for wrongful discharge in violation of public policy. Because this court finds that plaintiff states a valid claim for wrongful discharge where she argues that her termination was in violation of the NCEEPA, it need not reach defendants' NCPDPA or OSHANC arguments.

6

wrongful discharge claim. See, e.g., McLean v. Patten Communities, Inc., 332 F.3d 714 (4th Cir. 2003); Campbell v. Enter. Holdings, Inc., No. 5:11-CV-424-FL, 2011 WL 6780791, at *5 (E.D.N.C. Dec. 27, 2011). Moreover, courts have repeatedly recognized that termination based on an employee's disability in violation of the NCEEPA provides a proper basis for a wrongful discharge claim. See, e.g., Jefferson v. Biogen Idec Inc., No. 5:11-CV-237-F, 2012 WL 3629219, at *6-7 (E.D.N.C. Aug. 22, 2012); Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003) (considering a claim for wrongful discharge in violation of the NCEEPA while looking to the NCPDPA to determine if plaintiff was disabled under the NCEEPA); Atkins v. USF Dugan, Inc., 106 F. Supp. 2d 799, 809 (M.D.N.C. 1999). Thus, plaintiff has stated a claim for wrongful discharge over which this court has jurisdiction and upon which relief can be granted.

## CONCLUSION

Based on the foregoing, defendants' partial motion to dismiss plaintiff's claim for wrongful discharged is DENIED.

SO ORDERED, this the 15TH day of May, 2013.

LOUISE W. FLANAGAN
United States District Judge